UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANAGRAM INTERNATIONAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | No. 24 CV 12194 <br><br> Judge Georgia N. Alexakis |

**ORDER**

For the reasons set forth below, the Court concludes that plaintiff has improperly joined 75 defendants in violation of Rule 20 of the Federal Rules of Civil Procedure. The Court orders plaintiff to show cause in writing by 3/7/25 why the case should not be dismissed. Briefing on a motion to dismiss filed by a subset of defendants [74] is suspended in the interim.

**STATEMENT**

*Background*

Plaintiff Anagram International, LLC is a Minnesota-based company that makes balloons. [1] ¶¶ 6–7. In November 2024, plaintiff brought suit in this District alleging that 202 defendants had infringed on three of plaintiff's trademarks and 37 of plaintiff's copyrights by selling knockoff products on a variety of online platforms. *Id.* ¶ 8; [8]. The trademark and copyright registrations identified in the complaint cover many different kinds of balloons: ballons shaped as ladybugs, champagne bottles, butterflies, pineapples, ballerinas, dump trucks, etc. [1] ¶ 8. The full scope of the products at issue is reflected in the approximately 400-page exhibit that plaintiff attached to its complaint. [1-2]–[1-5] Ex. 2 Parts 1–4.

As is typical in these "Schedule A" cases,[1] the same day that plaintiff filed its complaint, plaintiff also filed an *ex parte* motion seeking a temporary restraining order. [11]. Among other forms of emergency relief, plaintiff sought to enjoin the 202 defendants listed on its Schedule A from selling any allegedly infringing product and to impose a blanket freeze on all of defendants' assets regardless of whether those assets were traceable to sales of infringing products. *See generally* [12]; *see also* [24] at 6 (restraining defendants, without limitation, from "transferring or disposing of *any money or other of Defendants' assets*") (emphasis added). Plaintiff attached 1,288 pages to its *ex parte* motion—a compilation of screenshots purporting to show that each of the 202 defendants was actively selling the allegedly infringing products on various online platforms. [13]–[21].

The district court previously assigned to this matter granted plaintiff's motion on December 5, 2024, and issued a temporary restraining order set to expire 14 days later. [24]. Just before that expiration date, the Court granted plaintiff's motion to extend the temporary restraining order by another 14 days. [26]–[27].

On December 27, 2024, while the temporary restraining order was still in effect, plaintiff sought a preliminary injunction. [32]. At this point, 21 defendants (all represented by one set of attorneys) filed an opposition to plaintiff's motion for a preliminary injunction. [36]. Two days later, 27 more defendants (all represented by the same set of attorneys) filed a second opposition to plaintiff's motion for a preliminary injunction. [42]. Eleven days later, another 14 defendants—represented by a different set of attorneys—entered appearances. [57]. While in this posture, the matter was reassigned to this Court. Then, in early February 2025, another 13 defendants appeared, represented by another attorney. [82].[2]

### *General Rules of Joinder*

The party advocating for joinder bears the initial burden of showing that joinder is proper under Rule 20(a)(2). *See In re Veluchamy*, 879 F.3d 808, 819 n.4 (7th Cir. 2018). Under Rule 20(a)(2), defendants may be joined in a single action if two

---

[1] For a primer on how Schedule A cases typically operate, the Court refers the interested reader to *Zorro Productions Inc. v. The Partnerships*, No. 23-CV-5761, 2023 WL 8807254 (N.D. Ill. Dec. 20, 2023), and Professor Eric Goldman's Columbia Law Review article on the topic, *see* Eric Goldman, *A Sad Scheme of Abusive Intellectual Property Litigation*, 123 COLUM. L. REV. F. 183, 194-195 (2023). Schedule A cases are a phenomenon largely confined to this District—despite the fact that the plaintiffs are rarely located here and the online platforms that Schedule A defendants use to sell allegedly infringing products operate throughout the United States. *See* Goldman, *supra*, at 2 n.1 (noting that more than 88% of Schedule A cases were filed in the Northern District of Illinois in a dataset of 3,217 cases filed between 2013 and 2022).

[2] In the Court's experience, it is unusual for defendants to appear in Schedule A cases at all—entries of default and default judgment are far more common.

requirements are satisfied: (1) the claims against them are "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2)(A)–(B).

"Courts generally find that claims against different defendants arose out of the same transaction or occurrence only if there is a 'logical relationship between the separate causes of action.'" *Estee Lauder Cosms. Ltd. v. The Partnerships*, 334 F.R.D. 182, 185 (N.D. Ill. 2020) (quoting *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012)).[3] To be part of the same transaction "requires shared, overlapping facts that give rise to *each* cause of action"—not just "distinct, albeit coincidentally identical, facts." *In re EMC Corp.*, 677 F.3d at 1359 (emphasis added). It is therefore not enough that two defendants are alleged to have committed the same type of violation in the same way. *See AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014). Joinder requires some closer factual connection among defendants indicating that the claims against them arose from the same (or at least overlapping) set of facts. Consistent with these principles, "[c]ourts in this district generally agree that alleging that multiple defendants have infringed on the *same copyright* in the same way does not create the substantial evidentiary overlap required to find a similar transaction or occurrence." *See Roadget Bus. Pte. Ltd. v. The Partnerships*, No. 23 C 17036, 2024 WL 1858592, at *6 (N.D. Ill. Apr. 29, 2024) (emphasis added).

### *Joinder-Related Concerns in Schedule A Cases*

This Court has previously raised concerns about potential misjoinder under Rule 20 in the Schedule A context because of the large number of defendants plaintiffs typically name. *See, e.g.*, *Bug Art Limited v. The Partnerships*, 24 CV 7777, Dkt. 28 (N.D. Ill. Oct. 18, 2024); *Yi Pu Intelligent Technology Co., Ltd. v. Gyroor et al.*, No. 25 CV 81, Dkt. 19 (N.D. Ill. Jan. 27, 2025). It is not uncommon for plaintiffs to name hundreds of defendants in a single intellectual-property infringement action. The sheer number of named defendants has caused the Court to seriously doubt whether each of those several-hundred defendants' actions were sufficiently connected to be part of the same transaction or occurrence under Rule 20(a)(2)(A). The Court's concerns have also been motivated by the often boilerplate language that Schedule A plaintiffs insert in their complaints in an attempt to stave off joinder concerns. For example, the Court often sees the same basic complaint alleging that hundreds of defendants are all working "in active concert" with one another. However, these complaints rarely support this conclusory "active concert" allegation with facts plausibly suggesting that defendants were, in fact, connected to one another in the

---

[3] For brevity, the Court will use "The Partnerships" when citing to cases in which the full defendant case caption reads "The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A" (or some variation thereof).

process of their alleged infringement.[4]

In light of these concerns, the Court routinely asks plaintiffs in Schedule A cases to file supplemental memoranda addressing the possibility of misjoinder. As an alternative, the Court gives plaintiffs leave to file an amended complaint with a smaller subset of defendants along with a memorandum explaining why that smaller subset of defendants is properly joined. The Court makes this request, in its discretion, to remedy potential instances of misjoinder. *See Estee Lauder*, 334 F.R.D. at 186 ("The Seventh Circuit has recognized the broad discretion that district courts have in remedying misjoinder, so long as the court's decision avoids unnecessary harm to the parties.") (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001)); *see also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (questioning why district court did not, on its own, raise an issue with joining 24 defendants). "It is appropriate for federal courts to raise improper joinder on their own, especially when the sheer number of defendants waves a joinder red flag." *Estee Lauder*, 334 F.R.D. at 186. The need to raise joinder issues *sua sponte* is especially critical in Schedule A cases where there is often no adversary, *see supra* n.2, and the burden of combining unconnected defendants falls most heavily on the Court. *See id.* (describing the "enormous time and effort" it would take the Court to check the evidence from "dozens and dozens" of online stores with no connection to one another).

### *Joinder-Related Concerns in This Case*

Consistent with this general practice, the Court issued a minute order in this matter questioning "the propriety of joining 202 defendants in a single action" and directing plaintiff to file a supplemental memorandum addressing the issue. [49]. As an alternative, the Court gave plaintiff leave to file an amended complaint and Schedule A and memorandum addressing joinder. *Id.*

Plaintiff here chose the latter. Effectively conceding that its initial joinder of 202 defendants was improper, plaintiff filed an amended complaint, [50], with an Amended Schedule A listing 75 defendants, [51]. Plaintiff also submitted a memorandum explaining why it believed that joinder of 75 defendants was appropriate under Rule 20. [55]. In support of its position, plaintiff advanced the following reasons:

1. **Similarity of products sold.** Specifically: "Defendants share unique identifiers, such as design elements and similarities of the counterfeit

---

[4] To be sure, at the pleading stage, plaintiffs do not need to allege facts that definitively establish a link among the defendants; they need only allege facts that plausibly establish such a connection. *See, e.g., Viking Arm AS v. The Partnerships*, No. 24 C 1566, 2024 WL 2953105, at *2 (N.D. Ill. June 6, 2024). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences." *Id.* at 4; *see also id.* at 11 ("Each of the Defendants uses common design elements [and] offers similar counterfeit products for sale.").

2. **Similarity of when products were sold.** Specifically: "Defendants are selling counterfeit balloons infringing the same trademark during the same limited time period. [Dkt. Nos. 52-53]. For example, the screenshot evidence for Defendants definitively establishes that each of these Defendants was offering for sale and selling products infinging [sic] Plaintiff's ANAGRAM Trademark Registration No. 1,533,437 during September and October of 2024." *Id.* at 10.

3. **Similar efforts to conceal infringing activities.** Specifically: "Defendants go to great lengths to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operations to violate Plaintiff's ANAGRAM trademarks and exploit U.S. consumers." *Id.* at 4; *see also id.* at 11 (each defendant "omits contact information or other information for identifying Defendants, offers no credible information regarding their physical addresses and uses the same advertising and marketing strategies to target consumers while attempting to evade enforcement").

4. **Infringing sales have all taken place in this District.** Specifically: "All of the Defendants in Schedule A have offered for sale or made sales to individuals located in the Northern District of Illinois. … By participating in this collaborative endeavor, Defendants have engaged in conduct that meets the criteria for joinder under Fed. R. Civ. P. 20(a)." *Id.* at 4 (internal citation to record omitted).

Having considered these arguments, the Court is not persuaded that the 75 defendants are properly joined in this matter.

*First*, the Court is not convinced that the similarity of products sold satisfies Rule 20(a)(2)(A). The products here are decidedly *not* similar. The Court has reviewed the 436 pages of screenshots that plaintiff attached to its memorandum addressing joinder and sees a veritable menagerie of animal-shaped balloons. [52], [53]. The infringing products include balloons shaped like pandas, ladybugs, penguins, cats, ducks, rabbits, kangaroos, chickens, and pigs. No "common design element" is readily ascertainable among defendants' products. On each screenshot, plaintiff has highlighted the word "Air Walker," but has made no effort to explain in its memorandum the significance of that term. Moreover, to the extent that the products bear some similarity in appearance, that in and of itself is not evidence of a singular

5

transaction or occurrence. *See Estee Lauder*, 334 F.R.D. at 188 ("Considering that the Defendants are copying the Estée Lauder products, it is not a surprise that the counterfeited end-results—along with their images and descriptions—would be similar."); *Ilustrata Servicos Design, Ltda. v. The Partnerships*, No. 21-CV-05993, 2021 WL 5396690, at *2 (N.D. Ill. Nov. 18, 2021) ("Nor are Defendants or their alleged infringement 'interrelated' simply because the products sold by Defendants are similar.").

*Second*, the Court is not persuaded by the timing of the infringing sales or the purportedly similar efforts that defendants undertake to conceal their unlawful activities. In advancing these arguments, plaintiff tries to leverage the reasoning in *Bose Corp. v. The Partnerships*, 334 F.R.D. 511 (N.D. Ill. Feb. 19, 2020). As an initial matter, *Bose* involved an evidentiary hearing. *Id.* at 512. Plaintiff here has not offered to provide this Court with live, sworn testimony, subject to cross-examination, of the type presented in that case. *Id.* at 517–18. Second, *Bose* rejected many of the same arguments that plaintiff makes here. For example, *Bose* rejected the argument that joinder was proper simply because "the defendants sell[] the same counterfeit products through similar internet stores." *Id.* at 514. It also rejected the argument that joinder was proper because of "similarities among the aliases' webpage designs and marketing information," reasoning that "even if the webpages were all identical, that would not overcome the likelihood that Defendants are just copycats, both of the Bose style … *and of each other*." *Id.* (emphasis added). And it rejected the argument—based on a record as threadbare as the one here—that joinder was proper because the defendants there "share[d] information about how to successfully sell counterfeit products in the United States and how to evade legal enforcement." *Id.*

Ultimately, *Bose* concluded that 17 defendants were properly joined under a theory that there was an "occurrence"—not a "transaction"—of mass harm on the internet. *Id.* at 515–16. More specifically, *Bose* reasoned that joinder was appropriate because "[i]ndividual actions which alone may have minimal impact on society or the economy can have a substantial impact through aggregation that is only possible through the internet." *Id.* at 516. The Court will not adopt *Bose*'s reasoning. It is not binding precedent, and even its persuasive authority has been diminished by subsequent cases declining to adopt its approach. *See, e.g.*, *Zaful (Hong Kong) Ltd. v. The Partnerships*, No. 24 CV 11111, 2025 WL 71797, at *4 (N.D. Ill. Jan. 10, 2025); *Toyota Motor Sales, USA, Inc. v. The Partnerships*, 24 CV 9401, Dkt. 27 at 2–3 (N.D. Ill. Nov. 18, 2024); *Bailie v. The Partnerships*, 734 F. Supp. 3d 798, 803–04 (N.D. Ill. 2024); *Estee Lauder Cosmetics Ltd. et al. v. The Partnerships*, 20 CV 845, Dkt. 40 at 5–6 (N.D. Ill. June 22, 2020). Having carefully reviewed these latter opinions, the Court is more persuaded by their reasoning.

To more precisely explain its position, the Court borrows language from *Zaful*:

There are innumerable bad acts conducted using the internet that have

a substantial impact in the aggregate – courts must require more than that to establish joinder. *See, e.g., Malibu Media, LLC v. Reynolds*, No. 12-cv-6672, 2013 WL 870618, at * 13 (N.D. Ill. Mar. 7, 2013) (collecting cases involving use of BitTorrent to download the same pornographic images and concluding "[w]hile the law of joinder does not necessarily require temporal overlap or specific knowledge of other defendants, it does require more than mere allegations that two or more unrelated defendants stole the same product in the same way without ever interacting with each other").

…

The lack of limiting principle inherent in Plaintiff's approach flies in the face of a "consistent line of cases in this District holding that Rule 20(a)'s requirement for a common transaction or occurrence is not satisfied where multiple defendants are merely alleged to have infringed ..." *Bailie*, 734 F. Supp. 3d at 803.

*Zaful*, 2025 WL 71797, at *4.

The Court also borrows the following analysis from *Toyota Motor Sales*:

A swarm implies movement as a crowd. In the BitTorrent context, "swarm" refers to a group of computers in a peer-to-peer network downloading the same torrent. In this way, the computers are connected in purpose. Sometimes that purpose was to share copyright-protected files. In such instances, the copyright holder faced a "swarm" of individuals seeking to harm it by illegally uploading and downloading its protected works. That differs from the situation here, where the plaintiff faces a number of alleged counterfeiters who have no shared purpose. The plaintiff claims that the defendants fit a particular profile: they use nondescript seller aliases; (2) operate in foreign jurisdictions with little or no credible information regarding their identity or physical address; and (3) show evidence of market coordination such as similar advertising, marketing strategies, and techniques to evade detection and liability. That does not link the defendants to the same transaction, occurrence, or series of transactions or occurrences.

I went to a concert a few weeks ago. When I got off the train, a vendor was selling what I suspected to be counterfeit t-shirts bearing the performer's likeness. As I continued toward the venue, I encountered a second vendor selling some of the same t-shirt designs as the first vendor. As I crossed the venue's parking lot, a third counterfeiter offered some of the same t-shirt designs for sale as the first two. These three

7

> vendors had the same profile. They sold the same merchandise. They used the same tactics to try to get my attention. Two of them even offered similar deals ("two for $30"). One could even argue that they "swarmed" the concert venue that evening. But that does not establish a "logical relationship" between them. Had I purchased a t-shirt from all three, only to have each fall apart after the first wash, it would not establish a series of transactions or occurrences allowing me to join them in a single lawsuit. That is, unless I had some link connecting them. To further illustrate this point, assume I am a super fan and decided to follow the performer to Los Angeles, California, where I encountered similar vendors selling the same t-shirts as I approached the venue. Even if the t-shirts came from the same factory, and even if the unauthorized vendors employed the same hustle, I would have a hard time establishing a connection between a vendor in Chicago and a vendor in Los Angeles— even though they fit a particular profile.

*Toyota Motor Sales*, 24 CV 9401, Dkt. 27 at 2–3.[5]

*Third*, plaintiff's argument that joinder is proper because all defendants "have offered for sale or made sales to individuals located in the Northern District of Illinois" is baseless. [55] at 4. That 75 individuals all sell products in one of the nation's largest metropolitan areas is not even evidence of a "collaborative endeavor," generically understood, let alone a serious argument that formal joinder is proper under Rule 20. *Id.* Under plaintiff's logic, every drug dealer in the greater Chicagoland area—by virtue of the fact that they are engaged in the same unlawful activity in the same general vicinity—is engaged in a communal, rather than competitive, undertaking. The logic does not hold water.

That leaves plaintiff's argument that the Court should permit joinder of 75 defendants for reasons of judicial efficiency. *Id.* at 12–13. The Court has already made some reference to the inefficiencies that arise in Schedule A cases. In further response to plaintiff's argument regarding judicial economy, the Court again borrows language from *Toyota Motor Sales*:

> [A]ny suggestion that overlooking the requirements of Rule 20 serves judicial economy fails. The Court must still review infringement contentions as to each defendant, whether the defendants are joined in one case or sued individually. Because the Court does the same work, this does not improve efficiency. Experience has shown that allowing

---

[5] One group of defendants in this matter contends that plaintiffs have plausibly alleged joinder under *Bose*'s swarm theory. *See* [69] at 2. But, as discussed above, the Court disagrees with that position as a matter of law. The Court's conclusion might be different if defendants had conceded that they were, in fact, working in concert with one another. But defendants have not made that concession.

8

dozens … of defendants to be joined in one case undermines judicial economy. In addition to evaluating the plaintiff's evidence as to each defendant, the Court must keep track of each defendant's filings. While true that many defendants default in Schedule A cases, there are times when multiple defendants appear, seek different relief, require multiple hearings on varying motions, have different dates, and so on. This creates friction within the case that complicates the "managing and structuring civil litigation for fair and efficient resolution of complex disputes."

*Toyota Motor Sales*, 24 CV 9401, Dkt. 27 at 4 (citing *Cont'l Indem. Co. v. BII, Inc.*, 104 F.4th 630, 645 (7th Cir. 2024)); *see also Bailie*, 734 F. Supp. 3d at 804 (explaining that because Schedule A cases typically proceed, at least for some period of time, in an *ex parte* context, the "evidence presented … is by its very nature one-sided" and "the law demands close scrutiny of such affidavits [and evidence], particularly in those instances wherein the affiant is not a disinterested party").

Plaintiff's judicial efficiency argument is especially unpersuasive on this record. The Court held a hearing in this matter on January 14, 2025, just after plaintiff amended its Schedule A to drop the number of defendants from 202 to 75. At that hearing, two different attorneys appeared, with each one representing a different group of defendants. At the outset of the hearing, the Court asked plaintiff's counsel if both attorneys still had clients who were defendants in the case in light of the amended Schedule A. *Plaintiff's counsel could not answer the Court's question.* With 75 defendants on its Schedule A, plaintiff's counsel was unable to track who he was suing. If plaintiff's counsel cannot track such essential information, the Court is hard-pressed to understand why it should use its own resources to do so.

Finally, the Court notes that one set of defendants in this matter has argued that even if there is misjoinder, the remedy is to sever claims against a misjoined defendant. [69]. The Court disagrees. It will not permit misjoinder of defendants only to contemplate severance later. *See Oakley, Inc. v. The Partnerships*, No. 21 C 536, 2021 WL 308882, at *2 (N.D. Ill. Jan. 30, 2021) ("A 'shoot first and ask questions later' approach does not seem … appropriate here, particularly given the manner in which lawsuits of this type typically proceed, with under-seal filing, *ex parte* temporary restraining orders, asset freezes, and the like.").

## CONCLUSION

In sum, on this record, the Court finds that plaintiff has failed to meet its burden to show that joining 75 defendants in this single lawsuit is proper. Plaintiff is further ordered to show cause in writing by 3/7/25 why the case should not be dismissed without prejudice. Briefing on a motion to dismiss filed by one subset of defendants [74] is suspended in the interim.

Date:2/21/25

Georgia N. Alexakis
United States District Judge